UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM                     **Date:**  July 20, 2026

**Title:**     *Li Tong v. James Janecka, et al.*

================================================================

Present:   The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

|  Christianna Howard  |  N/A  |
|:---:|:---:|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff | Attorneys Present for Defendant |
| N/A | N/A |

**Proceedings:**     **(In Chambers) Order Granting Petition (ECF 1)**

Petitioner Li Tong filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on July 1, 2026. (ECF 1.) For the reasons stated below, the Petition is **granted**.

## I.     Factual Background

Petitioner Li Tong is a noncitizen who is currently detained at the Adelanto ICE Processing Center, within the Central District of California. (ECF 1 ("Pet.") ¶¶ 1-2.) She entered the United States in October 2020 and was detained upon entry. (Pet. ¶¶ 15-16.) She was granted humanitarian parole under § 212.5, and was released. (Pet. ¶ 16.)

Following her release, Petitioner married a United States citizen in December 2024, obtained employment authorization, and pursued her asylum application. (Pet. ¶ 17.) She alleges that she has complied with all the conditions of her release, has never been arrested, and has no criminal record. (Pet. ¶¶ 16-17.) She has, however, continued to be a visible, public opponent of the Chinese Communist Party; she has participated in numerous protests, delivered public speeches, published articles, and donated to pro-democracy causes. (Pet. ¶ 18.)

Page **1** of **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM            **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

===================================================================

In December 2025, Petitioner appeared for a scheduled USCIS asylum interview and was taken into ICE custody. (Pet. ¶ 19.) She alleges that she was not provided notice or other process prior to her arrest. (Pet. ¶ 19.)

Petitioner has had three bond hearings. At the first, held in January 2026, the IJ concluded that he lacked authority to grant bond. (Pet. ¶ 23; ECF 9-1 at 1) (IJ Order I).) On February 19, 2026, bond was denied, with the IJ citing an outstanding arrest warrant. (ECF 9-2 at 1 (IJ Order II).). On June 12, 2026, a different IJ held a *Rodriguez* hearing and again denied bond after concluding that Petitioner is a flight risk. (Pet. ¶ 24; ECF 9-3 at 1 (IJ Order III).)

The Petition discusses the arrest warrant mentioned in the February 2026 bond order. In advance of the bond hearing, DHS filed a Form I-213 asserting that the Chinese Government issued an arrest warrant for Petitioner in July 2022, and that Interpol issued a Red Notice in October 2022 for the alleged crime of "illegal pooling of public deposits." (Pet. ¶ 20.) Petitioner alleges that the arrest warrant was for a different person. (Pet. ¶ 21.) She further alleges that the Red Notice is a "single conclusory" page, that such red notices are abused by the Chinese government on occasion, and that DHS submitted no other evidence of any offense. (Pet. ¶¶ 21-22.) Petitioner alleges that this red notice is only part of the pressure the Chinese government has placed on her and her family; Petitioner's daughter was placed on an exit-ban list, and the Chinese government has placed other pressures on her to discourage her activism abroad. (Pet. ¶ 18.)

Petitioner filed this Petition on July 1, 2026, alleging that her detention violated due process and that her bond denial was deficient because it inadequately explained why she was a flight risk. (Pet. ¶¶ 25-38.) Respondents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM          **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

===================================================================

answered (ECF 9 ("Answer")).[1] The matter is fully briefed and ready for decision.

## II.   Due Process Analysis

Petitioner claims that her sudden revocation of parole, without pre-deprivation notice or hearing, violated her procedural due process rights, and that release is appropriate. (Pet. ¶ 25-28.) Respondents dispute that claim. (Answer at 6-7.) Petitioner has the better view.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at \*2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

---

[1] In the interest of providing timely relief, the Court declines to hold this Order pending Petitioners' reply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM          **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

==================================================================

A,      *Protected liberty interest*

On the first point, the Court finds that Petitioner has a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention.

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*, a seminal case in this area. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if she fails to

Page 4 of **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM          **Date:**   July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

=====================================================================

live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in her continued liberty. *Id.* at 481-84.

Petitioner was given humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and was released pending adjudication of her asylum application. (Pet. ¶ 1, 16.) The grant of humanitarian parole under § 1182(d)(5)(A) was an implicit promise that Petitioner would be able to stay in the community until "the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). The purpose of parole in this case was to permit Petitioner to pursue her asylum claim—a purpose that has not yet been fulfilled. (Pet. ¶ 2 (Petitioner arrested at her asylum interview); EOIR Automated Case Information (showing that Petitioner's hearing on her asylum application is set for August 2026).) Petitioner relied on this promise, conditional as it was: she built a life in the United States. (Pet. ¶ 17.) She married a U.S. citizen, obtained work, and built ties in the community. (Pet. ¶ 17.) The Court thus concludes—as have many courts in this Circuit—that once Petitioner was released on humanitarian parole, she gained a protected liberty interest in remaining out of custody. *E.g., Noori v. LaRose*, 807 F. Supp. 3d 1146, 1163-64 (S.D. Cal. 2025) (arriving alien who was paroled into the United States on humanitarian parole has liberty interest in his continued release); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *see also Mohammadi v. Bondi*, No. C26-420-MLP, 2026 WL 607767, at *5 (W.D. Wash. Mar. 4, 2026) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM          **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

==================================================================

    B.    *Process owed in connection with re-detention*

Given that Petitioner has a protected liberty interest in her conditional release, the question is what process she is owed before the government would take that liberty interest away. Petitioner claims that due process required process before she was taken into custody. (Pet. ¶¶ 26-27.) She thus argues that the appropriate habeas remedy is for her to be released back to the community. (Pet. at 11.) The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews v. Eldridge* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Petitioner's constitutional right to process before she was re-detained.

As to the first factor, and as set out in the prior section, the liberty interest at stake here is significant. Petitioner has a substantial interest in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM           **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

======================================================================

remaining in her home, working, and maintaining her relationships in the community. *See Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) And where a petitioner has not received any custody hearing or other process in connection with the revocation of her parole, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

As noted above, Section 1182 provides that individuals released on humanitarian parole may be detained "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). That provision is an implicit promise that humanitarian parole will not be revoked unless the purposes of the parole have been served. *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-45 (D. Or. 2025). Respondents' own regulations align with that reading: they state that termination of humanitarian parole occurs when the purposes of parole have been accomplished or when, in the opinion of a defined group of officials, neither humanitarian reasons nor public benefit warrants her continued presence. 8 C.F.R. § 212.5(e)(2)(i). Once she was released, then, Petitioner had a liberty interest "in remaining at liberty unless [he] no longer meets those

Page **7** of **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM                **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

===============================================================

criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up). In the case of humanitarian parole, that means at least: "(1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Velasquez-Chinga v. Noem*, No. 3:26-CV-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026). But there is no evidence that any of those three things occurred here.

Finally, Respondents have not articulated any countervailing government interest—the third and final *Mathews* factor—that supports providing this process only after Petitioner's parole has been revoked. Due process "usually" requires a hearing before the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. *Id.* at 128. But neither of those exceptions appears to apply here—that is, Respondents have not presented any argument that quick action was necessary. (ECF 7.)

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM          **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

==================================================================

### III.   Harmlessness

Respondents argue that any due process violation was adequately remedied by her subsequent bond hearings. (Answer at 6-7.) Respondents argue that these subsequent bond hearings should be considered in the *Mathews v. Eldridge* analysis. (*Id.*) The Court views this, better, as a species of harmlessness—that is, that even if there were a constitutional violation in Petitioner's initial detention, that such violation is harmless because a later neutral decisionmaker deemed her detention appropriate. There are three reasons, however, that harmlessness does not apply here.

First, Respondents do not factually or legally develop their argument that any error is harmless (or that the later bond hearings affect the *Mathews v. Eldridge*) analysis. The entirety of the argument is one generic sentence in their Answer, saying that the post-deprivation hearings "meaningfully reduced the risk of an erroneous deprivation." (Answer at 6.) They do not explain why that is so, however, or support their argument with legal authority. Arguments that are not "coherently develop[ed]" are forfeited—a rule that is routinely applied against parties far less sophisticated than the United States. *See Hernandez v. Garland*, 47 F.4th 908, 916 (9th Cir. 2022).

Second, many courts to have looked at the issue have found that a post-detention bond hearing does not undo the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. *See, e.g., Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at \*3 (N.D. Cal. July 14 2025); *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at \*4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM                    **Date:**   July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

================================================================

process she was owed"); *Saballos Rosales v. Noem*, No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing *Hasratyan*); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

Third, to the extent that such error could ever be harmless, Respondents have not shown that any constitutional error was harmless on the facts of this case. Petitioner was detained based on an arrest warrant, allegedly, issued for a different person, and on an allegedly baseless red notice issued by the Chinese government as part of a campaign to silence her dissidence. Her attempt to challenge those allegations and support her claims is made infinitely more difficult by the fact that she is trying to do so from custody.

Any of these three reasons would be enough to grant the Petition, even without reaching Petitioner's claim that the bond hearing she received was faulty. Together, they are more than adequate to decline to find the constitutional violation harmless here.

## IV.   Exhaustion

The only other argument Respondents make is one premised on failure to exhaust (Answer at 3-5), but that argument is off base as to this claim.

Page **10** of **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03638-BFM                    **Date:**  July 20, 2026

**Title:**      *Li Tong v. James Janecka, et al.*

=====================================================================

Respondents argue that Petitioner should have appealed the adverse decision on her *bond hearings* (Answer at 3-5), but Petitioner's most forceful challenge is to the violation of her procedural due process rights, not to the result of her bond hearing. Constitutional claims are generally excepted from the exhaustion requirement, because neither IJs nor the BIA are permitted to consider constitutional challenges to the statutes they administer. *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013). Respondents offer no basis not to apply that general rule here.

## V.     Appropriate Remedy

As has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position she would have been absent the due process violation—that is, she should be released from custody on the conditions that were initially imposed. *E.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); *Jasbin v. Warden*, No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that petitioner was only entitled to bond hearing as Maldonado Bautista class member); *Prior v. Chestnut*, No. 1:25-cv-01131-JLT-EPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

## IV.     Conclusion

Accordingly, Claim One in the Petition (Pet. ¶¶ 25-28) is granted. Petitioner Li Tong (A# 213-615-073) is ordered immediately released on the conditions previously imposed. Any property confiscated during her arrest shall be returned to her. The remaining Claims in the Petition are denied as moot in light of the relief granted on Claim One.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**    5:26-cv-03638-BFM                **Date:**  July 20, 2026

**Title:**        *Li Tong v. James Janecka, et al.*

================================================================

The Court declines to enter the specific future injunctive relief sought (Pet. at 11-12); the process provided in this case is inadequate but the Court is not inclined to dictate the procedure that would comply with due process with the level of specificity requested.

Petitioner's counsel shall file a status report confirming Petitioner's release within three days of her release from custody; if release is delayed for any reason, Petitioner shall promptly notify the Court. Upon receipt of confirmation that Petitioner has been released, judgment will issue and the Court will close the case.

If Petitioner's counsel seeks EAJA fees, counsel shall file a timely motion with supporting documentation.

**IT IS SO ORDERED**

cc:    Counsel of Record

Initials of Preparer:      ch